## CAIN v. UNITED STATES.
### No. 47 C 491.

District Court, N. D. Illinois, E. D.

May 14, 1948.

See also, D.C., 73 F.Supp. 1019.

William C. Dill, of Milwaukee, Wis., and Edward U. Dithmar, of Chicago, Ill., for plaintiff.

Otto Kerner, Jr., U. S. Dist. Atty., of Chicago, Ill., for defendant.

SULLIVAN, District Judge.

This action is brought under Section 24(20) of the Judicial Code, as amended, 28 U.S.C.A. § 41(20), known as the Tucker Act. The complaint sets out that on October 24, 1944, plaintiff was appointed secretary to one of the Judges of the Circuit Court of Appeals for the Seventh Circuit, at an annual salary of $2600. That she remained so employed from October 24, 1944, to June 29, 1946, when her employment was terminated without fault on her part. Following the termination of her employment plaintiff sought payment, through the Director of the Administrative Office of the United States Courts, in the sum of $297.12 claimed to be due her as a civilian employee of the United States, under the provisions of the Leave Law, Title 5 U.S.C.A. §§ 61b and 61d, on the ground that within the meaning of the Leave Law she had accumulated twenty-five working days of annual leave not taken by her, by virtue of which she became entitled to the amount for which this suit is brought.

There is no controversy between the parties to this suit as to any material question of fact.

On the authority of an opinion rendered by the Comptroller General on May 24, 1946, the Director of the Administrative Office refused to make this payment, although that office continuously since its establishment had theretofore up to the present time followed the provisions of the Annual Leave Law. Plaintiff subsequently filed her motion for a summary judgment, supported by her own affidavit and the affidavit of Judge Minton, for whom she had served as secretary. Both sides have filed briefs, the Government adopting as its brief the opinion of the Comptroller General. In that opinion the Comptroller General held that secretaries and law clerks to United States Judges, while they come within the letter of the Leave Law do not come within the spirit thereof, nor within the intent of Congress in enacting such legislation, and are therefore not entitled to be paid for accumulated leave when they are separated from the service.

The question before this court for disposition is whether plaintiff, as a secretary to one of the United States Judges, comes within the terms of Title 5 sections 61b and 61d, commonly known as the Leave Law. Section 30b of Title 5 U.S.C.A. fixes a "twenty-six days' annual leave * * * [for] all civilian officers and employees; * * * temporary employees * * * entitled to two and one-half days leave for each month of service." The section then provides that "With the exception of teachers and librarians of the public schools of the District of Columbia and officers and employees of the Panama Canal and Panama Railroad on the Isthmus of Panama, and except as provided in Section 4 hereof, (covering the Postmaster General and officers and employees in or under the Post Office department), all civilian officers and employees of the United States wherever stationed and of the government of the District of Columbia, regardless of their tenure, in addition to any accrued leave, shall be entitled to twenty-six days' annual leave."

Title 5 U.S.C.A. § 61b provides:

"Lump sum payment for accumulated or accrued annual leave upon separation from

service; Whenever any civilian officer or employee of the Federal Government or the government of the District of Columbia is separated from the service or elects to be paid compensation for leave in accordance with the Act of August 1, 1941, as amended by the Act of April 7, 1942 (Section 61a of this Title) or section 4 of the Act of June 23, 1943, he shall be paid compensation in a lump sum for all accumulated and current annual or vacation leave to which he is entitled under existing law. Such lump-sum payment shall equal the compensation that such employee would have received had he remained in the service until the expiration of the period of such annual or vacation leave."

Section 61d provides:

"Accumulated or accrued leave due on transfer to agency under different leave system; lump-sum payment.—That all accumulated and current accrued leave shall be liquidated by a lump-sum payment to any civilian officer or employee of the Federal Government or the government of the District of Columbia in cases involving transfer to agencies under different leave systems. Such lump-payment shall equal the compensation that such employee would have received had he not been transferred until the expiration of the period of such leave. Provided, That the lump-sum payment herein authorized shall not be regarded, except for purposes of taxation, as salary or compensation and shall not be subject to retirement deductions."

In his opinion the Comptroller General refers to report No. 1252, June 17, 1935, of the Committee on the Civil Service, House of Representatives, accompanying H.R. 8458, which became Public Law 471, 5 U. S.C.A. §§ 29a, 30b to 30e, 30*l*, a portion of which reads as follows:

"The committee feels that the time has come for a restoration of annual leave to the employees of the Government, and feel that this is justified because most of the employees in Washington, and many of those in the field, come from places away from where they are at work and wish to use their vacations for visits home. Any absence from the office even for a few minutes is charged to annual leave granted to the employees. If they want to have a check cashed at the bank, it is charged to annual leave; if they must go to the dentist, or should they wish to attend a funeral, the time occupied in such activities is charged to annual leave. The result is that with only 15 days annual, when vacation time comes, the average employee has only a few days left."

Relying on the above report, the Comptroller General then proceeds to hold:

"From the foregoing it is apparent that it was the intent of the Congress to grant leave of absence with pay only to those civilian employees of the Federal Government whose official duties require substantially their full time and attention over extended periods. The same considerations which prompted the granting of vacation leave to such employees are not present with respect to employees whose official duties are such as to consume only a portion of their time throughout the year—leaving them extended non-work periods for vacation and recreational purposes. The very nature of such employment precludes any necessity for a statutory grant of vacation since the non-work periods normally occurring under such conditions of employment serve the same purposes as vacations for full time employees. * * *

"By reason of the nature of their duties it is apparent that such employees occupy a status different from that occupied by Federal civilian employees generally. Their appointments, qualifications, tenure and salary are matters exclusively within the discretion of the judges. And it unquestionably is true that their hours of duty are not subject to any fixed schedule applicable to all such employees, but rather are governed by the activities of the judge whom they serve. As pointed out by Mr. Justice Holtzoff in his letter there doubtless are many occasions when such employees, either because of court recess, absence of the judge, or other circumstances, are in a non-work status for extended periods during which they remain in a pay status."

It is agreed that plaintiff, in her capacity as secretary to one of the United States Judges, was a civilian employee of the United States; that Judge Minton, whom she served as such secretary, certified that at the time she was separated from the service,

she had earned twenty-five days of unused annual leave. The Leave Law provides that *"all civilian employees* of the United States" regardless of their tenure are entitled to receive the benefits of the Leave Law, with the exception of teachers and librarians of the public schools of the District of Columbia, officers and employees of the Panama Canal and Panama Railroad on the Isthmus of Panama, and officers and employees in or under the Post Office Department. Admittedly, plaintiff, as secretary to one of the United States Judges, was such a civilian employee and does not fall within any of the enumerated exceptions. The language used in the Act is plain, clear and unequivocal, and admits of but one interpretation. Had Congress intended to except secretaries and law clerks to United States Judges from its provisions, I believe it would have included them among the enumerated exceptions.

In Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 194, 61 L.Ed. 442, L.R.A. 1917F, 502, Ann.Cas. 1917B, 1168, the Supreme Court said:

"It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the Act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms. * * *

"Where the language is plain and admits no other than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion. * * *

"The name given to an act by way of designation or description, or the report which accompanies it, cannot change the plain import of its words. If the words are plain, they give meaning to the act, and it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning."

I believe that the holding of the Comptroller General that the duties of secretaries and law clerks to United States Judges consume only a portion of their time and that they are normally in a non-work status for extended periods of time is merely an un-supported conclusion of fact. Surely in the busy Court at Chicago, in the Northern District of Illinois, of which I am a member and consequently with which I am most familiar, none of the secretaries or law clerks are ever in a non-work status for extended periods of time, except for their annual summer vacations, to which, under the Leave Law, they are entitled. My own law clerk and secretary, as well as those serving all of the other Judges in Chicago are obliged to observe a fixed schedule of attendance, being on duty every day from nine to five o'clock, and sometimes for much longer hours covering Saturdays and Sundays, evenings and holidays, depending on the court work of the Judges. And, when for any reason, a Judge is obliged to be absent from his court, he requires that his secretary and law clerk be on duty. It may be true, as the Comptroller General assumes in his opinion, that there are localities throughout the United States where secretaries' and law clerks' duties consume only a portion of their time, but from my own every-day knowledge, no such condition exists in the Chicago area, nor ever has, and I daresay the same is true as to New York, Los Angeles, Detroit, the District of Columbia, and other metropolitan centers where court work is heavy.

The Comptroller General, in support of his opinion, relies upon the case of Church of the Holy Trinity v. United States, 143 U.S. 457, 12 S.Ct. 511, 516, 36 L.Ed. 226, where the Supreme Court was called upon to construe an Act which prohibited the importation or immigration of aliens into the United States to perform labor or services under contract. In holding that the Act did not apply to a contract between an alien minister of religion and an incorporated church, whereby he engaged to remove to the United States and become its rector or minister, the court said:

"It is the duty of the courts, under those circumstances, to say that, however broad the language of the statute may be, the act, although within the letter, is not within the intention of the legislature, and therefore cannot be within the statute."

The Comptroller General therefore assumes that while the inclusion of law clerks

and secretaries within the provisions of the Leave Law may be within the letter of the Act, they do not come within the intention of Congress, because to permit them the benefits of the Act would "superimpose twenty-six days vacation leave, with pay, upon the non-work days normally occurring in such employment" and would result in absence from duty with pay for periods far in excess of that authorized for Federal employees. generally.

I disagree with the Comptroller that such a situation would result, for the reason that under the provisions of the Leave Law, before a secretary or law clerk becomes entitled to payment for accrued annual leave the employing Judge must certify that such leave has actually accrued. In the instant case Judge Minton has certified that plaintiff had accrued twenty-five days of annual leave for which she was entitled to be paid when she was separated from the service, and the Judge's certificate surely definitely establishes this fact.

In George Van Camp & Sons Co. v. American Can Co., 278 U.S. 245, 49 S.Ct. 112, 113, 73 L.Ed. 31, 60 A.L.R. 1060, the Supreme Court said:

"* * * The words (of the statute) being clear, they are decisive. There is nothing to construe. To search elsewhere for a meaning either beyond or short of that which they disclose is to invite the danger, in the one case, of converting what is meant to be open and precise, into a concealed trap for the unsuspecting, or, in the other, of relieving from the grasp of the statute some whom the Legislature definitely meant to include. Decisions of this court, where the letter of the statute was not deemed controlling and the legislative intent was determined by a consideration of circumstances apart from the plain language used, are of rare occurrence and exceptional character, and deal with provisions which, literally applied, offend the moral sense, involve injustice, oppression or absurdity, * * * or lead to an unreasonable result, plainly at variance with the policy of the statute as a whole."

Quite obviously the Leave Law, if literally applied to secretaries and law clerks, will not result in any of the evils above enumerated, but on the contrary will only result in this group of employees enjoying a benefit to which they are lawfully entitled. I believe that if this group is to be excluded from the coverage of the Leave Law, it is a subject for legislative not judicial consideration. To Congress is entrusted the power of enacting laws; interpretation only is lodged in the courts. If this group of employees is to be excepted from the benefits of the Leave Law, Congress, as it has done in a number of other instances, should make the exception, not the Comptroller General or the Courts.

This is the first time this question has been presented to a court for decision, and I have given it very serious consideration and have carefully read all cases which have any bearing on the subject, and I am of the opinion that the language of the Leave Law is so plain, clear and unambiguous as to permit of but one construction, namely, that law clerks and secretaries, as civilian employees of the United States, are included within its provisions.

Plaintiff is therefore entitled to summary judgment.