MaddeN, Judge,
delivered the opinion of the court:
The original plaintiff in this case died during the pendency of the suit, and his executor has been substituted as plaintiff. However, in this opinion, the word plaintiff will refer to the original plaintiff.
The plaintiff was the general manager, the highest executive officer of the Alaska Railroad, an agency of the United States, from August 1, 1928 to January 6, 1946, except for a period of less than a month in 1943. In his suit he claimed overtime compensation under section 23 of the Act of March 28,1934,48 Stat. 522, 5 U. S. C. 673c, which is quoted in finding 3. There has been extensive litigation in this court with regard to the coverage of this statute. The first case was Townsley v. United States, 101 C. Cls. 237, affirmed, United States v. Townsley, 323 U. S. 557.
In cases involving employees of the Alaska Railroad, this court has held that the statute applied to nonoperating employees, Poggas v. United States, 118 C. Cls. 385, operating employees, Samples v. United States, 135 C. Cls. 548 (July 12, 1956), and administrative and clerical employees, Samples v. United States, 135 C. Cls. 945. The instant question is whether the general manager of the railroad is, along with all the other employees, covered by section 23.
The Government urges that he is not, and offers several reasons. It says that he was not a member of “the several trades and occupations”, as that expression is used in the statute. The word “occupation” is, of course, broad enough to include almost any employment. Most wage board employees are mechanical workers to whom the word trade is naturally applicable, but, as we have seen, we have applied the word “occupation” to the clerical workers of the Alaska *417 Railroad. It would seem that we have interpreted the word “occupation”, in its context, as covering all Federal employment not covered by the Classification Acts or by statutes directly fixing salaries.
The Government says that the plaintiff’s salary as general manager was not set by a “wage 'board (s) or other wage-fixing authority (ies) ”, again quoting section 23. The plaintiff’s salary was set by the same authority that set the pay rates for all other employees of the Alaska Railroad, the Secretary of the Interior. It was no doubt set by the Secretary at a figure which would obtain and retain the services of a competent general manager, in view of current salaries for such positions in private enterprises. Administrators charged with the responsibility for setting wages and salaries use various methods. See Abbott v. United States, 138 C. Cls. 459. The fact that the plaintiff’s salary remained the same while the wages and salaries of other employees of the railroads were twice increased is of no significance. The wage-fixing procedures do not require that the wages of all employees be increased if those of any are increased.
The Government urges that, because the plaintiff as general manager had no one to keep his time and his overtime, the overtime provision of the statute could not in practice be applied to him. The 1934 Act was not, in fact, applied to any employees of the railroad, and they obtained their rights under it only by litigation, as shown above. During the period prior to the enactment of the War Overtime Pay Act of 1943, 57 Stat. 75, there was no point in keeping records of overtime work on the railroad, because the Government’s position was that overtime was not compensable. It has been difficult in the cases of many of the employees to reach a satisfactory conclusion as to the amount of their overtime. Because it was not the fault of the employees that records were not kept, we have not penalized them for lack of definite record proof.
The plaintiff testified that he worked 48 hours a week as a minimum during the period in question. He spoke of being up late at night when there were snow-slides and other emergencies, and of the impossibility of keeping the problems of the chief executive officer of a railroad within the *418 bounds of a fixed number of hours. He was in Washington, D, C. for budget hearings and other purposes, on one occasion for a period of some six months. He was not cross-examined in any detail with regard to his general statements about his long hours. However, during all of the period in question up to February 9,1942, all office workers of the railroad were on a 89-hour week basis; hence the office in which the plaintiff worked was officially open only for that number of hours. During the periods spent by the plaintiff in Washington, he would have been making his headquarters in offices which were officially open only 89 hours per week.
The plaintiff’s testimony was given many years after the period in question. It may well be that his recollection of long hours and frequent emergencies related more to the period of the war than to the period from 1934 to the beginning of the war. On the whole, we do not feel justified in finding as a fact that the plaintiff worked, on the average, more than 44 hours a week during the period in question.
. The plaintiff.is entitled to recover, and judgment will be entered to that effect.- The amount of recovery will be determined in further proceedings pursuant to Rule 38 (c).
It is so ordered. -
Whitaker, Judge; LittletoN, Judge; and Jones, Chief Judge, concur.
Laramore, Judge, took no part in the consideration and decision of this case.
FINDINGS 0E FACT
The court, having considered the evidence, the report of Commissioner Richard H. Akers, and'the briefs and arguments of counsel, makes findings of fact as follows:
1. O. F. Ohlson, in whose name the petition in this proceeding was filed and who will hereinafter sometimes be referred to as the “decedent”, died June 6,1956, and on December 21,1956, George A. Parks, Executor of the Last Will and Testament and sole heir of O. F. Ohlson, was substituted as the plaintiff.
2. The decedent was continuously employed by The Alaska Railroad, an agency of the United States, from August 1, *419 1928, through January 6, 1946, except that the records of the railroad show that he resigned on July 24, 1943, and was reappointed on August 12, 1943. During the entire period of his service he was the general manager of the railroad.
3. This action was instituted to recover overtime compensation under section 23 of the act of March 28, 1934 (48 Stat. 522, 5 U. S. C. 673c), which reads as follows:
The weekly compensation, minus any general percentage reduction which may be prescribed by Act of Congress, for the several trades and occupations, which is set by wage boards or other wage-fixing authorities, shall be re-established and maintained at rates not lower than necessary to restore the full weekly earnings of such employees in accordance with the full-time weekly earnings under the respective wage schedules in effect on June 1,1932: Provided, That the regular hours of labor shall not be more than forty per week; and all overtime shall be compensated for at the rate of not less than time and one half.
4. Pursuant to the provisions of the act of March 12,1914 (38 Stat. 305, 48 U. S. C. 301), authorizing him to construct a railroad in Alaska, to employ such officers, agents, or agencies, in his discretion, as might be necessary to enable him to carry out the purposes of the act, and to fix the compensation of all officers, agents, or employees appointed or designated by him, the President of the United States on June 8, 1923, promulgated Executive Order 3861 which authorized the Secretary of the Interior to operate the railroad “in all respects and to all intents and purposes, the same as if the operation thereof had been placed by law under the jurisdiction of the Secretary of the Interior”.
5. On January 11,1929, the Secretary of the Interior prescribed regulations governing the office of the general manager of The Alaska Eailroad. They provided, among other things, that:
The following matters must be presented to and receive the approval of the Secretary before becoming effective:
*420 (T) Increases or decreases in rates of pay, or changes in working conditions, of any class or body of employees (except minor changes).
The decedent did not, however, have any authority under this regulation with respect to his own compensation.
6. During all periods of time relevant to these proceedings the rates of pay of employees of The Alaska Railroad, other than the decedent, have been fixed by wage boards or other wage-fixing authorities and in accordance with the following procedure:
The general manager of the railroad, after conferences with the union representatives of the employees (sometimes referred to as collective bargaining negotiations) which may or may not result in an agreement, submits proposed increases or adjustments in wage schedules for the approval of the Secretary of the Interior, or, during a part of the period covered by these proceedings, to his delegate, the Special Advisor on Labor Relations. In those cases where the employees were not members of a union or for some other reason were not represented at the time salary or wage adjustments were being made, the general manager undertook to adjust the wages of such employees in a manner consistent with agreements reached with union representatives of other employees. There is no evidence that the Secretary of the Interior, during the period involved in these cases, ever disapproved a proposed wage schedule agreed to by the general manager and the employees’ representatives. In one instance, namely in 1947, when the general manager and the employees’ representatives were unable to reach an agreement, the entire matter was referred to the Secretary of the Interior for decision who, after a hearing, determined that the proposal as made by the general manager for the adjustment of the controversy should be changed in certain respects more favorable to the employees and he issued an order putting new wage schedules into effect in conformity with his determination of the entire matter, but without having secured the approval of the employees’ representatives.
In arriving at approved wage rates in these conferences and negotiations for employees of the type ordinarily employed by railroads, consideration is given to rates paid em *421 ployees performing similar duties on railroads in the continental United States. In the case of riverboat employees, the practices and policies of the maritime industry were followed as closely as possible and the rates of pay of the Inland Waterways were used as a base in determining the rates of pay for such employees. In the case of Eska coal miners, their wages were fixed by reference to the wages of employees of the Evans Jones Coal Company, a privately owned and operated coal mine within a few miles of the Eska mine. In addition, in view of the higher living costs in Alaska, an effort is made to maintain Alaska Railroad wages at a level at least 25 percent higher than wages for comparable positions in the continental United States. This percentage is not rigidly applied as a maximum and in instances might be greater. Basic compensation in recent years has been modeled generally upon that prevailing on the Northern Pacific Railway with the Alaska differential being added thereto to cover the higher cost of living in that territory. The cost of living differential for both operating and nonoperating employees of The Alaska Railroad has been based, since May 1, 1948, on a differential between Seattle and Alaska railbelt consumer prices of 44 to 45 percent. The actual differential in pay rates between The Alaska Railroad and the Northern Pacific Railway has been more than 44 percent for lower wage employees and less than 44 percent for higher wage employees. Where inequities result in particular instances from the general application of a wage scheme, The Alaska Railroad endeavors to iron them out by appropriate adjustments with the concurrence of the employees’ union representatives.
It does not appear, however, that any of the foregoing procedures were utilized in fixing the decedent’s rate of pay as general manager. His original letter of appointment, signed by the Secretary of the Interior, stated that his salary would be $14,400 per year, and, except possibly for the effect of the Economy Act, this was never altered during the period of his employment, although other employees of The Alaska Railroad received a 10 percent increase in pay as of July 1,1938, and a further increase of about $25 a month for non-operating employees as of January 1,1942.
*422 7. By General Circular No. 310 of The Alaska Eailroad, issued by the decedent as general manager, dated July 15, 1932, the Economy Act of June 30, 1932 (47 Stat. 400), providing for compulsory time off without pay for certain employees of the Federal Government, was applied as of July 1,1932, to all employees of The Alaska Eailroad.
8. By General Circular No. 323 of The Alaska Eailroad, issued by the acting general manager, dated April 1, 1933, the Economy Act of March 20,1933 (48 Stat. 8), providing for a percentage reduction of pay for certain employees of the Federal Government, was applied to all employees of The Alaska Eailroad as of April 1,1933.
9. On June 8, 1934, the decedent, as general manager of The Alaska Eailroad, issued to “all concerned” the following General Circular No. 344:
The Independent Offices Appropriation Act, 1935 (Public No. 141,73d Congress, March 28,1934) provides in part as follows:
“Seo. 23. The weekly compensation, minus any general percentage reduction which may be prescribed by Act of Congress, for the several trades and occupations, which is set by wage boards or other wage-fixing authorities, shall be reestablished and maintained at rates not lower than necessary to restore the full weekly earnings of such employees in accordance with the full-time weekly earnings under the respective wage schedules in effect on June 1,1932: Provided, That the regular hours of labor shall not be more than forty per week; and all overtime shall be compensated for at the rate of not less than time and one-half.”
As Section 23, quoted above, applies to The Alaska Eailroad, effective during the week ending June 16, 1934, and thereafter until Section 23 is amended or repealed,_ the weekly hours of service of employees to whom it is applicable will be 40 hours per week and the weekly compensation shall be the same as paid on June 1, 1932. _
_ While the regular hours of work of per annum and per month employees within the terms of Section 23 of the Independent Offices Appropriation Act, 1935, are required to be fixed at not to exceed 40 per week, whereas the regular hours previously may have' been 44 or 48 per week, the rate of compensation should remain on the same annual or monthly basis, the only adjustment, if any, required being that necessary to pay an annual rate *423 not lower than that received June 1, 1932, for the same duties, less the percentage reduction.
No overtime shall be worked except in case of extraordinary emergency. If, in case of an extraordinary emergency, employees are required to work more than the regular hours on any one calendar day, but are not required to work in excess of 40 hours during the week, payment of overtime compensation is not authorized. The term “overtime” is not applicable to employees paid on an annual or monthly basis and there is no purpose or intent shown by Section 23 to extend the right to overtime compensation to employees paid on an annual or monthly basis who may be required to work more than their regular tour of duty of 40 hours per week.
On July 13, 1934, the Comptroller General of the United States rendered an opinion, 14 Comp. Gen. 42, upon a submission by the Secretary of the Interior, holding that section 23 of the act of March 28,1934, was inapplicable to employees of The Alaska Railroad because, as he said, “Railroad employees are regarded generally as a distinct class of personnel and their occupations as not being within ‘trades and occupations’ of mechanics and laborers as employed in section 23 of the act of March 28,1934.”
Application of General Circular No. 344 continued until July 15, 1934, when the general manager (decedent) issued General Circular No. 347, also to “all concerned”, reading as follows:
The Comptroller General of the United States advises that The Alaska Railroad employees are not subject to Section 23 of the Independent Offices’ Appropriation Act, 1935 (Public No. 141, 73d Congress, March 25, 1934), which regulated the weekly compensation, hours of work, and overtime compensation for the several trades and occupations in various Government Departments.
Effective July 15, 1934, the provisions of General Circular No. 344 are terminated and hours of service and/or salary rates will be re-established in all departments of the Railroad in accordance with regulations in effect prior to June 10,1934, the effective date of General Circular No. 344. '
Except for the period June 10 to July 15, 1934, and as outlined above in this finding, section 23 of the act of March *424 28,1934, was never made applicable by The Alaska Railroad in determining the pay of its employees.
10. By General Circular No. 397 dated June 20, 1938, the employees of The Alaska Railroad were advised of a general increase of 10 percent in their rates of pay effective July 1, 1938, such announcement reading as follows:
Effective July 1, 1938, the rates of pay applying to positions with headquarters in Alaska, excepting the position of General Manager, as contained in Wage Schedule No. 13 and supplements thereto, are increased by ten (10) percent: Provided, that this provision establishes a rate of 64 cents per hour for laborers; AND Provided Further, that the increased rate is to continue only until the amount of $160,000 has been expended for this purpose.
That 10 percent increase was made permanent and was incorporated in Wage Schedule No. 14 which became effective July 1, 1939.
11. In General Circular No. 356 of The Alaska Railroad, dated February 4, 1935, the percentage of reduction applicable to its employees under section 2 (b) of the Economy Act of March 20, 1933, was announced to be 5 percent.
12. General Circular No. 357 of The Alaska Railroad, dated March 25, 1935, announced that in accordance with section 2 of Public Resolution No. 3, 74th Congress, approved February 13, 1935, 49 Stat. 22, there would be no reduction of salaries on The Alaska Railroad after March 31, 1935.
13. By General Circular No. 470 of The Alaska Railroad dated December 31, 1941, the wages of substantially all of its employees, including both operating and nonoperating groups, were increased as of January 1, 1942. Operating employees received a flat increase of $28.50 as a monthly minimum with corresponding increases in daily, hourly and mileage rates. All nonoperating employees who were paid on a monthly or annual basis with certain minor exceptions received an increase of $25 per month, with proportionate increase in overtime rates. All nonoperating employees who were paid at an hourly or per diem rate received an increase of 12y2 cents per hour except longshoremen who had previously received an interim increase in that amount, *425 effective approximately June 1,1941, and except Eska Mine employees who had received an increase of 10 percent. All contract riverboat employees were increased $150 per season. The foregoing increases were incorporated in Wage Schedule No. 15, effective January 1,1942.
No increase was made in the decedent’s compensation by the foregoing circular.
14. The increases in rates referred to in the preceding findings were made to correspond to an increase which the employees of the railroads in continental United States had received plus the cost of living differential. However, the increases granted to these latter employees were effective September 1, 1941, whereas the Comptroller General had held that, in the absence of specific statutory authority, an administrative retroactive increase in the wages of government employees could not be made. In order to give to the employees of The Alaska Eailroad an increase for the period September 1 to December 31, 1941, similar to that granted to employees on railroads in the continental United States, a bill was introduced in the 77th Congress which was enacted as Public Law No. 825, approved December 22, 1942. That statute provided in material part as follows:
For services rendered during the period September 1, 1941, to December 31, 1941, inclusive, increases in wages over the amounts or rates paid during said period in accordance with the then current wage schedule are hereby authorized for employees of The Alaska Eailroad in Alaska, including contract employees, but excluding the general manager * * *. (56 Stat. 1071)
15. Prior to his employment by The Alaska Eailroad, the decedent had a long experience as a skilled craftsman in the American privately-owned railroad industry. He was employed by the Pennsylvania Eailroad in 1893 as a telegraph operator, and was thereafter advanced by that employer to switchman and foreman of passenger train switching crews. In 1901 he was employed by the Northern Pacific as a telegraph operator, and was thereafter advanced to relief station agent, station agent, train dispatcher, assistant chief dispatcher, night chief dispatcher, day chief dispatcher, trainmaster, assistant to general superintendent, *426 ■and division superintendent. During World War I, while un leave of absence from the Northern Pacific, he served as a transportation officer in the U. S. Army. He left the Northern Pacific to accept the position as general manager of The Alaska Railroad.
16. During the entire period of his service as general manager of the railroad, the decedent was paid a salary of $14,-400 a year in monthly installments of $1,200 each. That salary for that position had apparently been fixed by the Secretary of the Interior; it was the salary in effect when the decedent took the position. The salary was not fixed by statute during his period of service, and he was not a classified employee under the Classification Act of 1928 (42 Stat. 1488; 5 U. S. G 661).
17. On September 30, 1943, The Alaska Railroad issued General Circular No. 513 with respect to War Overtime Pay Act of 1943, which circular read as follows:
1. The Comptroller General in decision of August 21, 1943 (B-36217) held that the War Overtime Pay Act of 1943, approved May 7, 1943, Public Law 49, 78th Congress, is not applicable to employees of The Alaska Railroad whose wages are fixed and adjusted on a per diem, per hour, or piece work basis in accordance with administrative procedure, but that those of the Railroad employees whose wages are fixed and adjusted on a monthly or yearly basis come within the purview of the Act effective on and after May 1,1943_.
2. Pursuant to authority contained in the War Overtime Pay Act, the rules and regulations promulgated by Civil Service Commission by Department Circular No. 424, dated May 8,1943, or amendments thereto, will govern the administration of the Act in its application to the per annum and monthly employees of the Railroad.
3. The Secretary of the Interior in Department Order No. 1775 of December 26, 1942, established throughout the Department a forty-eight hour administrative work week, and authority to establish the. hours of duty in the field within the provisions of this order was delegated to the General Manager. The hours of duty as now established for employees of the Alaska Railroad will continue.
4. Pursuant to Department of the Interior Order No. 1821, dated May 26,1943, and Part III, Section 1 of Civil Service Commission Departmental Circular No. 424, the General Manager is authorized to order or approve over *427 time in excess of tbe administrative work week and to elect to grant compensatory time off from duty without loss of pay in lieu of overtime compensation to full-time per annum employees. Department heads will request the General Manager’s written approval for excess overtime work only in case of emergency and will also make a written report in duplicate to the- General Manager at the close of each month showing record of such overtime in excess of the established work week of 48 hours with the reasons therefor. All employees are cautioned that excess overtime must be approved.
Overtime pay under the War Overtime Pay Act of 1943 was computed on a calendar basis and was limited to the employee’s basic compensation not in excess of $2,900 per annum in the same manner it was applied to employees in the classified service. Nonoperating employees whose monthly or annual pay equaled or exceeded $2,900 a year received the maximum overtime pay of $52.36 per month for a forty-eight hour week, that is, 21.6667 percent of their monthly pay up to the maximum of $241,667 per month. The hourly rate for overtime in excess of forty-eight hours a week was determined by dividing the monthly rate up to $241,667 per month by 240 (30 days at 8 hours each) and multiplying the quotient thus found by iy2.
Subsequent to May 1,1943, the decedent received overtime compensation under the War Overtime Pay Act of 1943, computed at the maximum rate of $52.36 per month.
18. As general manager of The Alaska Railroad, the decedent was its chief executive officer. He supervised its operation, prepared programs for improvements and repairs, and made out budgets for submission to Congress through the Department of the Interior and the Bureau of the Budget. The latter activity required his presence in Washington once a year in connection with budget hearings. He was subject to the general supervision of the Secretary of the Interior, but, so far as the record discloses, this supervision was. very loosely exercised, and consisted chiefly of monthly reports rendered by the decedent.
19. Prior to April 19, 1933, all office employees at the Anchorage headquarters of The Alaska Railroad, including the administrative, accounting and clerical group, were regularly employed seven hours per day, six days per week, except *428 for the period October 1 to April 30 of certain years when they worked thirty-nine hours (5 days of 7 hours each and 4 hours on Saturday). On April 19, 1933, The Alaska Kail-road issued General Circular No. 326 which read in part as follows:
Hereafter, four hours, exclusive of time for luncheon, shall constitute a day’s work on Saturdays, for the following employees at Anchorage: Office Employees; Store Department Employees; Bridge & Building Gang and Mechanical Department Forces; Provided, That the head of the Department having supervision or control of such employees may, in emergency, or in the protection of life, health or property, require any employee to remain on duty on Saturday afternoon and such employee may be given not exceeding the equivalent time off during the following week, if and when he may be spared.
Thereafter and continuing until February 9, 1942, with the exception of a short period in 1934 when the forty-hour week was applied, all office workers of The Alaska Railroad employed at Anchorage worked on a thirty-nine-hour week schedule (5 days of 7 hours each and 4 hours on Saturday). All other nonoperating employees employed at Anchorage were on a forty-four-hour week schedule from prior to March 28, 1934, until January 9, 1943 (5 days of 8 hours each and 4 hours on Saturday), except for the short period in 1934 just referred to where the forty-hour week was applied. A few employees in Anchorage were required to work on Saturday afternoon — sometimes regularly and sometimes irregularly. In such cases, however, equivalent time was given during the following week.
20. By General Circular No. 475, dated February 5,1942, administrative, accounting and clerical employees were placed on a forty-four-hour week, that circular reading in part as follows:
Pursuant to Order No. 1633, issued January 8, 1942, by the Secretary of the Interior, effective February 9, 1942, the hours of service for supervisory, clerical and other employees of The Alaska Railroad now working only seven (7) hours per day, thirty-nine (39) hours per week basis, will be changed to an eight (8) hour day, forty-four (44) hour per week basis.
*429 Effective January 9, 1943, an administrative workweek of forty-eight hours was established for these employees and all other nonoperating employees, consisting of six days of eight hours each, and that continued until September 1,1949, when all nonoperating employees (with possible minor exceptions) were placed on a forty-hour week.
Beginning May 1,1943, and continuing until July 1,1945, all monthly or annual employees, including administrative, accounting and clerical employees, were paid overtime in accordance with the War Overtime Pay Act of 1943. Effective July 1, 1945, these employees were paid overtime for hours of work in excess of forty hours per week in accordance with the provisions of the Federal Employees Pay Act of 1945.
21. For the calendar years 1934 to 1937, inclusive, the following holidays were observed at the headquarters of The Alaska Railroad and as far as practicable in the field:
New Year’s Day
Washington’s Birthday
Decoration Day
Independence Day
Labor Day
Thanksgiving Day
Christmas Day
In addition to the foregoing, Armistice Day was included for the years 1938 to 1941, inclusive. For the year 1942, Armistice Day was excluded as a holiday but the other days mentioned were included. For the years 1943 and 1944, Christmas Day was the only holiday observed. During 1945, the only holidays observed were Labor Day, Armistice Day, Thanksgiving Day, and Christmas Day.
22. Since the decedent was an annual rated employee, and since section 23 of the act of March 28, 1934, was not considered applicable to the railroad as heretofore shown, no record was kept of his work on an hourly basis. However, for at least the greater part of the period from March 28, 1934, to May 1,1943, the decedent worked in excess of forty hours per week. We find that, on the average, he worked forty-four hours a week. He was never paid any kind of *430 overtime compensation and never received any compensatory time off for such period.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover, and judgment will be entered to that effect. The amount of recovery will be determined in further proceedings pursuant to Buie 38 (c).