Eugene C. SAUER
v.
The UNITED STATES.
No. 180-64.

United States Court of Claims.
Dec. 17, 1965.

Thomas M. Gittings, Jr., Washington, D. C., attorney of record, for plaintiff. King & King, Washington, D. C., of counsel.

Robert R. Donlan, Kensington, Md., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before DURFEE, Acting Chief Judge, REED, Justice (Ret.), sitting by designation, and DAVIS and COLLINS, Judges.

COLLINS, Judge.

Plaintiff, a former employee of the Court of Claims, seeks to recover $3,515.20, the amount allegedly due to him as payment for annual leave accumulated, but unused, during his years of Government service. Defendant has moved for partial summary judgment,[1] and plaintiff has filed a cross-motion for summary judgment.

---

1. Defendant concedes that plaintiff is entitled to recover $540.80, the lump-sum payment for 10 days of unused annual leave which plaintiff accumulated during his employment by the Court of Claims. For this reason, defendant's motion is for *partial* summary judgment.

Plaintiff was a civilian employee of the United States from November 13, 1917, until his retirement on May 31, 1961, except for the period, May 18, 1918, through June 30, 1922, when he served in the United States Army. Plaintiff was employed by the General Accounting Office from July 1922 until May 5, 1929. He was transferred to the Federal Bureau of Investigation, Department of Justice, on May 6, 1929, and served as a special agent (accounting) until October 1, 1944. On October 2, 1944, he entered into the employ of the United States Court of Claims as an auditor. He remained in the latter position until his retirement on May 31, 1961. While in service at the FBI, plaintiff had accumulated 89 days and 2 hours of unused annual leave. This leave had been accumulated under the provisions of section 1 of the Annual Leave Act of 1936, the Act of March 14, 1936, ch. 140, 49 Stat. 1161.

Upon plaintiff's employment by this court, he sought the transfer of his accumulated and unused leave, requesting the Chief Clerk of the court to take the necessary action to effect such transfer from the FBI. That request was denied due to a then existing policy not to transfer and credit accumulated leave of persons transferred to the employ of this court from positions within "any Executive Department, or any Independent Establishment," since this court's employees were not "under Civil Service."

Plaintiff persisted in his efforts throughout his employment with this court. He asked the Chief Judge and the court to direct the Clerk to accept such accumulated leave. All of plaintiff's requests were denied. In 1961, after his retirement, plaintiff filed a claim with the General Accounting Office. The Comptroller General denied this claim in 1963.[2] Thereafter, plaintiff sought relief from the Administrative Office of the United States Courts. By letter of December 2, 1963, that office took the position that since plaintiff had submitted his claim to the Comptroller General, "there is nothing this office can do in the matter."

Defendant asserts that plaintiff's primary claim (that regarding leave accumulated during his employment by the FBI) is barred by the 6-year statute of limitations, 28 U.S.C. § 2501 (1964). According to defendant, plaintiff's cause of action accrued (1) on October 1, 1944 (the date plaintiff resigned from the FBI), or (2) on December 21, 1944 (the date of enactment of the statutory provision upon which plaintiff's claim for a lump-sum payment is based), or (3) at the very latest, on June 24, 1953 (the date when the Court of Claims, through its Clerk, advised plaintiff that it would not accept transfer of his accumulated leave). Plaintiff's suit was filed in 1964.

The motions of the respective parties were referred to Commissioner Mastin G. White for his recommendation for conclusion of law. The commissioner recommended that defendant's motion for partial summary judgment be allowed. His opinion stated that plaintiff's primary claim had accrued no later than the end of 1948, and that, therefore, such claim was barred by the statute of limitations.

██ We are unable to accept the conclusion reached by our commissioner. On the contrary, we have determined that plaintiff's position regarding the timeliness of his claim is correct. Specifically, our decision is that plaintiff's claim pertaining to leave accumulated at the FBI did not accrue until May 31, 1961, the date plaintiff retired from Federal Service.

---

2. The Comptroller General, by letter dated January 7, 1963, denied plaintiff's claim and concluded by stating:

"Since there is doubt regarding the legal validity of your claim and since, also, it appears that those doubts should be resolved by regular judicial proceeding rather than by the determination of our Office, we feel compelled to disallow your claim under the principle of the Longwill v. United States [17 Ct.Cl. 288 (1881)] and Charles v. United States [19 Ct.Cl. 316 (1884)] cases."

The basis for plaintiff's primary claim is section 1 of the Act of December 21, 1944, 58 Stat. 845, as amended, 5 U.S.C. § 61b (1964). This section provides, in part, as follows:

Whenever any civilian officer or employee of the Federal Government * * * is separated from the service * * *, he shall be paid compensation in a lump sum for all accumulated and current accrued annual or vacation leave to which he is entitled under existing law. * *

With regard to the matter of timeliness, the crucial fact is that no claim for such a lump-sum payment could possibly accrue until the employee was separated from Federal Service. This characteristic of plaintiff's claim is not altered by the fact that, in order to prevail, plaintiff must also show that the Court of Claims erred in refusing to credit him with the annual leave accumulated during his years with the FBI.

██ Defendant states that, assuming the court's refusal to transfer the accumulated leave was wrongful, "plaintiff had, at that time [i. e., 1944 or 1953], a cause of action which he could have brought to require the United States Court of Claims to credit him with this annual leave." Defendant's assertion may be true; however, it relates to an action such as *mandamus* or possibly one for a declaratory judgment, *not* to plaintiff's present claim. As pointed out in Oceanic Steamship Co. v. United States, 165 Ct.Cl. 217, 225 (1964):

A claim against the United States first accrues on the date when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action. * * * [Citations omitted.] Therefore, where a claim is based upon a contractual obligation of the Government to pay money, the claim first accrues on the date when the payment becomes due and is wrongfully withheld in breach of the contract. [Citations omitted.] * * *

The same rule applies when the right to payment depends upon a statute rather than upon a contract. A prerequisite for plaintiff's claim was his separation from Government employment. Prior to his separation, "all the events" fixing liability had not occurred. Cf. Oceanic Steamship Co. v. United States, supra, 165 Ct.Cl. at 218 and 230. Thus, the fact that certain of the events had taken place many years before cannot be determinative. It was not until his retirement that plaintiff could seek a money judgment for the lump-sum payment.[3]

Our decision that plaintiff's claim is timely is not inconsistent with the holding of Nagle v. United States, 133 Ct.Cl. 254, 135 F.Supp. 424 (1955), another case involving an employee who transferred from the Department of Justice to the Court of Claims. The plaintiff in Nagle (the widow of the employee) relied not upon section 1 of the Act of December 21, 1944, but upon sections 2 and 3 of that act[4] and upon a contract theory. This court found each of plaintiff Nagle's alternatives to be barred by the statute of limitations. 133 Ct.Cl. 254, 256–257. Accordingly, the Government's motion to dismiss the petition was granted. However, it is important to note that, on February 13, 1956, the order was amended so as to make the dismissal without prejudice. One reason for the

3. Plaintiff was not entitled, in 1944, to draw two salaries simultaneously, i.e., one from the FBI until the expiration of his accumulated leave and another from the Court of Claims. See the Act of August 29, 1916, ch. 417, 39 Stat. 556, 582.

4. Act of December 21, 1944, ch. 632, §§ 2, 3, 58 Stat. 845. Section 2 related to lump-sum payments for accumulated or accrued annual leave upon death; section 3 pertained to such payments upon transfer to an agency operating under a different leave system. Section 2 was repealed by the Act of August 3, 1950, ch. 518, § 6, 64 Stat. 396. Section 3 was repealed by the Act of July 2, 1953, ch. 178, § 7(b), 67 Stat. 139.

amendment was the determination of the court that:

> * * * it is not possible to treat the petition as amended to include the allegation that plaintiff's accumulated leave at the Department of Justice should have been transferred to the U.S. Court of Claims and credited to his account.

In other words, the court wished to preserve for Mrs. Nagle the possibility of amending her petition to assert a claim similar to that of plaintiff Sauer, *i. e.*, a claim under section 1 of the Act of December 21, 1944. Therefore, Nagle v. United States, 133 Ct.Cl. 254, 135 F. Supp. 424 (1955), cannot properly be used as authority for the proposition that plaintiff Sauer's claim is time-barred.[5]

As indicated above, plaintiff must show that the refusal of the Court of Claims to accept a transfer (from the FBI) of his accumulated leave was er-

roneous. In this regard, plaintiff places reliance upon the Annual Leave Act of 1936[6] and a related executive order.[7] Under the executive order, plaintiff was entitled to have his leave account certified to and credited by the Court of Claims if, but only if, his new position was "within the purview of the * * * [1936 act]."

■ Defendant denies that plaintiff's position in the judicial branch was covered by the Annual Leave Act of 1936. We cannot accept the contention of defendant. The 1936 act applied, with certain exceptions, to "all civilian officers and employees of the United States * * *." None of the exceptions is pertinent here. Therefore, we conclude that plaintiff's position as auditor for this court was within the coverage of the 1936 act. Our conclusion is supported by the reasoning of Cain v. United States, 77 F.Supp. 505 (N.D.Ill.1948).[8] It fol-

5. After the entry of the order described above, Mrs. Nagle filed an amended petition in which she claimed that the leave accumulated by her deceased husband at the Department of Justice should have been transferred and credited to his account at the Court of Claims. This issue (identical to that raised by plaintiff Sauer) was never reached by the court, because the suit was settled at the pretrial stage. Plaintiff agreed to compromise her claims for an amount representing the value of the leave accumulated by Mr. Nagle during his tenure at the Court of Claims. Judgment was entered in accord with the stipulated settlement. 138 Ct.Cl. 875 (1957).

6. The Act of March 14, 1936, ch. 140, §§ 1, 7, 49 Stat. 1161–1162. Section 1 provided that Government employees covered by the act were entitled to 26 days' annual leave. Provision was also made for the accumulation of unused leave.

7. Under § 7 of the Annual Leave Act of 1936, the President was authorized to prescribe regulations for administration of the leave system. Accordingly, on January 13, 1944, Executive Order No. 9414, 9 Fed.Reg. 623 (1944), was issued. Section 4.9 of the order provided, in part, that:

> "When an employee is appointed, reappointed, or transferred from one permanent position to another permanent position, without a break in service, his leave account shall be disposed of as follows:
>
> "(a) If the position is within the purview of the leave acts of March 14, 1936, the leave account shall be certified to the employing agency for credit or charge to the employee."

8. In Cain v. United States, supra, the district court held that the secretary of a Federal judge was a "civilian employee" within the meaning of the Annual Leave Act of 1936. 77 F.Supp. 505, 508. The district court rejected the view expressed by the Comptroller General in 1946, 25 Comp.Gen. 808. The court stated: "If this group of employees [secretaries and law clerks of Federal judges] is to be excepted from the benefits of the Leave Law, Congress, as it has done in a number of other instances, should make the exception, not the Comptroller General or the Courts." 77 F.Supp. 505, 508.

Neither in Cain nor in the present suit was counsel for the Government able to present any *statutory* authority for the proposition that employees of the Federal judiciary were outside the scope of the 1936 act and related provisions or

lows, in view of Executive Order No. 9414, that plaintiff should have been credited with the annual leave accumulated at the FBI and that the lump-sum payment to which plaintiff is entitled must reflect such accumulated leave.

 The exhibits before us indicate that, with regard to the years 1944–52, no official records as to plaintiff's leave are available. Plaintiff correctly argues that he should not be penalized because of the failure of the court to keep or to make available such records. Cf. Parks v. United States, 141 Ct.Cl. 415, 417 (1958); Poggas v. United States, 118 Ct.Cl. 385, 410, 93 F.Supp. 1009 (1950). The exhibits before us indicate that plaintiff Sauer himself kept records of his annual leave. These exhibits constitute satisfactory evidence of the amount of leave which he had accumulated during the period 1944 to 1961.

We have concluded that the 89¼ days of annual leave which plaintiff had accumulated at the FBI should have been credited to his account at the Court of Claims. If this had been done, then, as of May 31, 1961, plaintiff's net accumulation of annual leave would have amounted to 64 days. That is, in 1944, plaintiff's account should have reflected the then maximum accumulation of 90 days (89¼ days from the FBI with the remainder accumulated at the court.) By May 31, 1961, this accumulation had been reduced, as a result of leave taken during certain years in excess of 26 days of annual leave, to 64 days. At the time of his retirement, plaintiff's rate of compensation was equivalent to $54.08 per day.[9] Thus, plaintiff claims the amount of $3,515.20 as payment for 64 days of annual leave and one interim holiday. For the reasons indicated above, plaintiff is entitled to recover the amount claimed.

Accordingly, plaintiff's motion for summary judgment is granted. Defendant's motion for partial summary judgment is denied. Judgment is entered for plaintiff in the amount of $3,515.20.

---

that, regarding such employees, a separate leave system existed.

Current provisions regarding annual and sick leave are contained in 5 U.S.C. §§ 2061–2071 (1964). Regarding exemptions, see 5 U.S.C. § 2061, 65 Stat. 679 (1951), as amended.

9. With regard to computation of the lump-sum payment, see 67 Stat. 137 (1953), as amended, 5 U.S.C. § 61b (1964). Also, see 67 Stat. 137 (1953), 5 U.S.C. § 2066 (a) (1964); this provision deals with annual leave accumulated under pre-1953 laws.