This case is before the court on defendant’s motion to dismiss. As is usual in patent and trade secret cases, counsel have belabored each other and the court with responses and rebuttals and a motion to strike, to the extent it is difficult to fix the mind on the only issue. This is: could plaintiff recover on an express contract theory or on a contract implied in fact, under any interpretation of the matter alleged in his petition?
He filed that document April 25, 1979, and any breach more than six years before that date is therefore barred. 28 U.S.C. § 2501. He alleges the Naval Air Development Center (hereinafter NADC) became interested in the development of high speed aerial delivery containers that could be destroyed after being dropped, and by the late 1960’s, such destruction was to be by burning without generation of smoke. Funds were expended unsuccessfully *954 on a variety of contracts. Officials, still before 1970, met with plaintiff and agreed, if he could develop the required container, they would award him a sole source contract for 100 units at a price of $250,000, plaintiff to deliver up his trade secrets and proprietary know-how. Plaintiff, on May 7, 1969, submitted a cylinder that passed the test. He completed his design and drawings that year, but received only $200 to pay for the cylinder tested. He continued to develop his trade secrets and know-how. In September 1969 he went to work as a consultant with Remcor, Inc., but made no assignment to them. On October 24, 1969, Remcor accepted (apparently as a subcontractor) an order from Brooks and Perkins, Inc. (a prime contractor) for four units of plaintiffs design. Remcor expressed that petitioner’s trade secrets and know-how would be furnished only to defendant and only confidentially. The contracting officer in charge of the Brooks and Perkins, Inc. contract was aware of the above and agreed that plaintiffs trade secrets and proprietary know-how would be kept in confidence, and the contract gave defendant no rights. Remcor furnished drawings to defendant, all containing warnings that each print, and the information and know-how therein, was the confidential property of Remcor, Inc. and might not be reproduced without permission. There is no other avenue alleged by which plaintiffs data got in defendant’s possession. To these restrictions defendant never objected. It fully understood plaintiffs position and "on information and belief’ "by an express or implied in fact contract with petitioner” defendant agreed to keep his trade secrets and proprietary know-how confidential and to use or disclose them only on payment. Its employees who so agreed had authority to do so. Yet NADC issued, on June 11, 1973, an invitation for bids which disclosed plaintiffs trade secrets and know-how (apparently to other bidders) and by this breach of contract, destroyed such trade secrets and know-how.
Treating the allegations most favorably to plaintiff, defendant received the drawings from Remcor and they carried warnings that they were confidential property of Remcor and were not to be reproduced without permission, but plaintiff had an express or implied contract on the side directly with defendant by which defendant recognized *955 that plaintiff had some rights of an unspecified nature in unspecified trade secrets and know-how, whether the same ones Remcor claimed not specified.
It is hornbook law that defendant is entitled to have its records show with whom it is dealing, and therefore a natural person cannot insert himself as real party in interest in a government contract ostensibly made with a corporation, even though one he owns or controls. Algonac Mfg. Co. v. United States, 192 Ct. Cl. 649, 428 F. 2d 1241 (1970). It does not appear then that plaintiff has any right to recover by virtue of whatever rights Remcor may have by reason of the inscription on the drawings saying that Remcor, Inc. was the owner.
As regards the various direct dealings plaintiff alleges between himself and defendant, the statute of limitations has long since run on the alleged agreement to award him a sole source contract for 100 units at a price of $250,000. Plaintiff completed his design work and passed the prescribed test in May and June 1969. These were the things he alleges he had to do before he could be awarded the promised contract. But all he got was $200 to cover his cost. He manifestly knew by then or soon after that he was not being awarded the contract. Thus his claim had accrued and the six years were running. 28 U.S.C. § 2501; Kabua v. United States, 212 Ct. Cl. 160, 546 F. 2d 381 (1976), cert. denied, 434 U.S. 821 (1977).
Plaintiff could plead facts in the alternative, though the normal way of doing this is in separate counts. The petition here is all in one count. Counsel is experienced. This is not an instance where a pro se pleader is given indulgence, as in Algonac, supra. A party cannot allege a cause of action to survive a motion to dismiss, where he also, in the same count, pleads facts that show he has no cause of action. Here plaintiff alleges an "express or implied in fact contract” by defendant to keep plaintiffs trade secrets and know-how confidential. Apparently it was a standing contract, in effect at all relevant dates, and ready to cover whatever drawings, etc., might come into defendant’s possession at any time.
The history and theory of defendant’s liability under an implied contract for misuse of intellectual property is explained in Griffin v. United States, 215 Ct. Cl. 710 (1978). *956 Quite simply, it is that the inventor submits data to the United States expecting to be paid, and the United States receives it, expecting to be called on to pay, for any use it makes. Such an undertaking like all contract commitments must have parties. There must be someone defendant looks to as the source of the data, and the putative payee. When defendant accepts data identified as the property of Remcor, Inc., this is inconsistent with any intent on its part to be liable to pay Corbin. There is no fraud or other impropriety alleged, by which Remcor might have substituted its name for that of the true owner. Thus the allegations of the petition lead inevitably to the conclusion that, whatever else Corbin’s alleged floating commitment might have attached to, it could not attach to data clearly identified as the property of Remcor. And there is no allegation that defendant received any data not identified as Remcor’s.
In view of the restriction notice, Remcor, Inc., would naturally be expected to be a party to this case. Its nonparticipation is not explained. Possibly the prime contractor, Brooks and Perkins, Inc., should be in the case too. It may be that they, either or both, for some reason are not supporting the claim. Plaintiff since 1970 has been a consultant to Remcor. The petition draftsman has tried to state a cause of action that will survive a motion to dismiss, without telling us clearly and candidly what has happened and why plaintiff must try to recover on a theory that leapfrogs the tiers of contractors between him and defendant. He must not complain if we take the petition as we find it.
Plaintiff moves to strike one of defendant’s many filings. This motion we deny.
In view of the foregoing, upon consideration of the petition, the motion to dismiss, and the briefs, we determine that the petition fails to state a cause of action redressable in this court. Accordingly, the petition is dismissed.