**Charles S. DANNA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 106–79C.**

United States Claims Court.

April 4, 1983.

Richard A. Sinzinger, Dallas, Tex., for plaintiff; John Kennedy, Dallas, Tex., of counsel.

Gerald L. Elston, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, for defendant; Andrew J. Dilk, Federal Aviation Administration, Washington, D.C., of counsel.

## OPINION

SPECTOR, Judge.

Plaintiff, a former supervisor of air traffic controllers for the Federal Aviation Administration (FAA), filed an amended complaint on April 12, 1979 seeking damages for the alleged uncompensated use of his suggestion for a comprehensive air traffic control system. The suggestion had been submitted some 18 years earlier, in March of 1961, under the FAA's Incentive Awards Program.

The claim here is essentially based on the theory of breach of an express or implied contract. Plaintiff seeks damages of not less than $5,025,000 for tangible and intan-

gible benefits realized from his suggestion; pain and suffering damages of $1,000,000; "damages to employment" of not less than $100,000, plus attorneys' fees and costs in an unspecified sum. There has been a prior action in the U.S. District Court on tort theories, which plaintiff has reserved should he be unsuccessful here.

Important threshold issues have been raised by affirmative defenses in defendant's answer, as explicated in its present Motion for Summary Judgment. It is urged that plaintiff's claim is time-barred because the petition was not filed here within 6 years after an action for breach of contract first accrued.[1] Defendant further submits that a claim filed this long after it first accrued is in any event barred by the equitable doctrine of laches.

Plaintiff responds that the statute of limitations was tolled by defendant's concealment of facts on which his cause of action depended, facts which were otherwise unknowable by plaintiff. Secondarily, plaintiff cites illness and domestic problems as sufficient to toll the statute of limitations. Alternatively, plaintiff characterizes his claim as a "continuing" one, and hence not time-barred for the 6-year period preceding the filing of his complaint.

*Statement of Facts*

The facts hereinafter set forth are gleaned from the pleadings, and from the exhibits and affidavits supporting the motion papers. On March 10, 1961 when plaintiff was on active duty as a supervisor of air traffic controllers for the FAA, he submitted under that agency's Incentive Awards Program a detailed and comprehensive written suggestion for modernization of the nation's air traffic control system.[2] While acknowledging that the suggestion was "well presented," the FAA advised plaintiff on October 13, 1961 that it "was not recommended for adoption" for reasons detailed in an attached "evaluation of Employee Suggestion." That evaluation concluded that plaintiff's plan for installing ground navigational facilities on a grid pattern throughout the continental United States had previously been evaluated several times following suggestions by others, and that it was not a new concept. The prior suggestions had also been "recommended for non-adoption." It was explained that plaintiff's suggestion would entail a "tremendous capital investment" and that in view of its limitations, implementation of the suggestion could not be justified at that time. The evaluation did acknowledge that plaintiff's particular suggestion "goes quite a bit further than previous suggestions and details specific equipment applications and operational procedures for the system once it has been installed."

Upon receipt of this rejection, plaintiff inquired of his superior's secretary regarding the proper procedure for resubmission. He was advised that resubmission was permissible after a waiting period of 6 months from the date of rejection. Plaintiff did not, however, resubmit his suggestion after 6 months or at any time thereafter. He retired from active service with the FAA ten years later, in May of 1971.

In an independent development, President John F. Kennedy wrote to FAA Administrator N.E. Halaby on March 8, 1961,[3] asking that the latter—

> conduct a scientific engineering review of our aviation facilities and related research and development and * * * prepare a practicable long-range plan to ensure efficient and safe control of air traffic within the United States.

The FAA Administrator was asked to work closely with the President's Science Advisory Committee and with the Task Force on National Aviation Goals, and to submit a report to the President by July of 1961. On November 1, 1961, the Administrator transmitted to the President the Report of the Task Force. The report was entitled

---

1. *See* 28 U.S.C. § 2501.

2. The suggestion was officially designated as No. A53355.

3. This was, incidentally, 2 days prior to submission of plaintiff's suggestion.

"Project Beacon," and the President on November 7, 1961 directed Halaby "to begin at once to carry out those recommendations of the [Project Beacon] report which [the Administrator believed would] move the airways program forward rapidly and efficiently."

Plaintiff alleges that it was about 15 years later in May of 1976 (5 years after his retirement from FAA in May of 1971), that he first discovered that Chapter A of the Report on Project Beacon endorsed the development of an air traffic control system which was, in his view, so similar to his suggestion of March 10, 1961, or parts thereof, that adoption of the Project Beacon Report constituted adoption of his suggestion. He alleges further discoveries by him in the period 1976–78 which persuaded him that his suggested system had been gradually implemented throughout the 1960's (when he was still employed by the agency) and the 1970's by the award of contracts for the development and manufacture of equipment described in his 1961 suggestion.

On February 17, 1977, plaintiff wrote Secretary Adams, Department of Transportation, asking that he be accorded recognition for the adoption of his suggestion. Having received no reply, he wrote President Carter on April 18, 1977, asking that a reply be expedited. On May 17, 1977, the FAA advised that, although there were no administrative time limitations for reopening award consideration in 1961 when plaintiff had submitted his suggestion, a 2-year time limitation was thereafter imposed in December 1966 in the agency's Handbook 3450.7, paragraph 71.[4] The letter explained the need for a 2-year "award entitlement period" following non-adoption of a suggestion by pointing out that:

the evaluators would normally still be available to review a reopened case; the

basis for rejection would still be fresh in the minds of those involved etc. However, without any reopening restrictions, a proper reevaluation could be limited or impossible, evaluators or technical personnel involved in program development involved in the subject area could have transferred, retired or died; etc.

The letter of May 17, 1977 concludes that: [Y]our time limit for reopening this issue began on December 2, 1966, with the issuance of FAA Handbook 3450.7, and ended on December 2, 1968. This actually provided you with a period of approximately 7 years to request a review of your claim. Your request, however, was not submitted until February 17, 1977, an elapsed period in excess of 16 years from the date of non-adoption of your suggestion. In view of the above, we have no recourse but to reject your request for reconsideration at this time. We trust that you appreciate our position, and regret that we cannot give you a more positive answer.

Thereafter, on November 17, 1977, plaintiff filed an action founded on tort in the U.S. District Court for the Western District of Louisiana.[5] It was dismissed without prejudice by reason of plaintiff's failure to file an administrative tort claim. Plaintiff filed an administrative claim on April 26, 1978 and it was denied May 15, 1978, with notice that claim could now be filed in the U.S. District Court under the Federal Tort Claims Act.[6] A complaint was filed in the U.S. District Court for the Northern District of Texas on November 13, 1978,[7] and it was transferred to the U.S. Court of Claims[8] on March 8, 1979.[9] In his present complaint, plaintiff asserts an implied contract claim, but preserves his tort allegations (over which this court has no jurisdiction) "for possible later remand or transfer

---

4. This handbook was available while plaintiff was still actively employed at FAA.

5. Civil Action No. 77–3451.

6. 28 U.S.C. § 1346(b) and § 2671 et seq.

7. Civil Action No. 78–1395F.

8. Predecessor of this court.

9. An "original complaint" and "amended original complaint" were then filed in the U.S. Court of Claims April 12, 1979 pursuant to that court's Rule 183.

to the United States District Court in the event that this Court would dismiss plaintiff's contract claims." [10]

### Discussion

For the limited purpose of resolving the issues framed by defendant's Motion for Summary Judgment and plaintiff's response, it is assumed that plaintiff's action was started on November 13, 1978, the date on which it was filed as a tort claim in the U.S. District Court. It is further assumed that his action for breach of an express or implied contract [11] proceeds on the theory that FAA's Incentive Awards Program expressly or impliedly promises an award in exchange for a suggestion which is adopted and used.[12] It must be further assumed for the limited purpose of this motion, that plaintiff's suggestion of March 10, 1961 was an original suggestion and that on October 13, 1961, after notice of non-adoption, all or part of it was subsequently adopted and used.

With these assumptions, the first issue involves an inquiry into when plaintiff's cause of action for breach of contract arose, that is, when could a suit first be brought upon it.[13] A claim based on an alleged contractual obligation to pay money, first accrues on the day when payment became due and was wrongfully withheld in breach of contract.[14]

In this case, the breach claimed would occur when the defendant allegedly began to use plaintiff's suggestion for its own benefit,[15] namely, when the President directed the FAA Administrator to proceed with Project Beacon, on November 7, 1961. This is because plaintiff specifically alleges in his amended complaint that adoption of his suggestion or parts thereof was ordered by President Kennedy. In the alternative, plaintiff also alleges in his amended complaint that "parts of his suggestion pertaining to automatic altitude reporting by the aircraft instrumentation to air traffic control facilities had been contracted for development by the FAA on July 25, 1961," an even earlier date.

Even if it is assumed, *arguendo*, that the cause of action did not accrue until additional parts of the suggestion were used,[16] all but one of about 12 alleged uses by defendant of parts of plaintiff's suggestion began well before November 13, 1972, more than 6 years prior to commencement of plaintiff's suit in the U.S. District Court on November 13, 1978.[17]

Plaintiff's action is therefore time-barred unless it can be shown that the statute of limitations was tolled in some respect. As to this, plaintiff argues that it was tolled until he says he acquired knowledge of his cause of action in May of 1976; and that he was unable to know the facts supporting his cause of action prior to that because defendant concealed its acts, and because they were otherwise "inherently unknowable." [18]

There are no facts to support that argument. No effort was made to conceal the Project Beacon Report on which plaintiff relies to demonstrate use of his suggestion. Plaintiff continued to work as a supervisor of air traffic controllers for 10 years after his suggestion was "recommended for non-

---

10. Par. 30, Amended Original Complaint.

11. The theory of relief vesting jurisdiction in this court.

12. *Cf. Corbin v. United States,* 221 Ct.Cl. 953, 618 F.2d 124 (1979).

13. *Delaware Tribe of Indians v. United States,* 84 Ct.Cl. 535, 538 (1937).

14. *Sauer v. United States,* 173 Ct.Cl. 642, 647, 354 F.2d 302 (1965).

15. *Freedman v. Beneficial Corp.,* 406 F.Supp. 917, 922 (1975).

16. An argument which is not made by plaintiff, but which is raised *sua sponte.*

17. The only use alleged to have occurred after November 13, 1972 concerns adoption of new rules by the FAA in March of 1979, adjusting downward the zones of positive control of aircraft. However, the zones adopted were *not* those suggested by plaintiff.

18. *See Japanese War Notes Claimants Ass'n, v. United States,* 178 Ct.Cl. 630, 634, 373 F.2d 356 (1967).

adoption" in 1961. In January of 1962, plaintiff's supervisor received a copy of the Project Beacon Report and in the normal course made a copy available to all employees under his direction, including plaintiff. It was, moreover, available after January 1962 in public libraries in the two cities where plaintiff continued to work during the relevant period.

It strains credulity to suggest that plaintiff, who had shown a keen interest in the whole subject by the very nature of his employment and the submission of a comprehensive suggestion under the Incentive Awards Program, was unaware of the existence of the Project Beacon Report and of implementing developments in that field until May of 1976. That report and those developments were not concealed nor were they "inherently unknowable."

In the *Japanese War Notes* case, it was held that even assuming:

> *ad arguendo* that either defendant concealed the counterfeiting or that it was "inherently unknowable", we find from the following [publication in the Britannica Year Book and a financial journal] that plaintiff was *on inquiry* that its cause of action existed at a date prior to six years before it filed its petition. [Emphasis supplied.] [19]

Nor does *Spevack v. United States*,[20] support plaintiff's position. In that case, it was held that the *secret* operation by the Atomic Energy Commission of a procedure for making heavy water using a dual-temperature process for which plaintiff (a former consultant and not a current employee) held a patent, represented concealment of plaintiff's claim serving to toll the statute of limitations.

Plaintiff also argues that unfortunate health and domestic problems during the relevant period served to toll the statute of limitations. His health problems were first diagnosed as "cerebral dysrythmia" in 1970, a year prior to plaintiff's retirement. As defendant points out, plaintiff continued to serve as a supervisory air traffic controller for 10 years after his suggestion was submitted and recommended for non-adoption, and during that period passed the rigorous annual medical examinations required for employment in that position. Moreover, he exercised all the other non-business functions normally required of him during that period. In these circumstances, the problems cited do not serve to toll the statute of limitations.

Finally, on that same issue, plaintiff argues that the statute of limitations should not bar those damages allegedly incurred during the 6-year period immediately preceding the filing of his action in U.S. District Court because his action should be regarded as one based on a "continuing claim," citing *Aktiebolaget Bofors v. United States*.[21] The facts in *Bofors* are readily distinguishable because, under the licensing agreement in that case, the Government was prohibited from exporting plaintiff's anti-aircraft gun. The court therefore held that each act of export would be in violation of an agreement not to export, whenever it occurred. The court stated:

> There would be no way to measure at any given time, the total damages which might result from violations then past and those which might occur in the future, and thus include them all in one suit.[22]

In contrast, the breach alleged in this case is that defendant failed to make a one-time lump sum payment (incentive award) to plaintiff when it began to use his suggestion. That is when his damages, if any, were incurred. There is no factor of uncertainty as to whether or not defendant would refrain from future breaches, as in *Bofors*. The breach occurred in this case, if at all, when defendant allegedly began using plaintiff's suggestion without compen-

---

19. *Id.,* 178 Ct.Cl. at 635, 373 F.2d 356.

20. 182 Ct.Cl. 884, 390 F.2d 977 (1968).

21. 139 Ct.Cl. 642, 153 F.Supp. 397 (1957).

22. *Id.* at 644, 153 F.Supp. 397.

sating him, and it then gave rise to a single cause of action.[23]

Finally, it is not necessary to discuss at length defendant's alternate argument that plaintiff's claim is barred by the doctrine of laches. Under that theory, defendant would be obliged to show prejudice to its ability to defend by reason of plaintiff's delay. It is noted in passing that a strong showing of such prejudice has been made. In the 17-year period which has intervened between the alleged breach and plaintiff's suit, documents have become unavailable as have the names of the personnel who evaluated plaintiff's suggestion back in 1961. Moreover, it would be difficult or impossible to locate competent witnesses to show, under defendant's theory that the present air traffic control system was previously developed during the early 1940's and 1950's, and prior to plaintiff's suggestion.

#### Conclusion

Defendant's motion for summary judgment is granted and the amended complaint herein shall be dismissed.

Edward J. Barshak, Boston, Mass., for plaintiff. Jeffrey S. Stern and Regina E. Roman, of counsel, all of Sugarman, Rogers, Barshak & Cohen, Boston, Mass.

John Fargo, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for U.S., Vito DiPietro, Washington, D.C., of counsel.

---

**23.** Plaintiff also offers *Underwater Storage, Inc. v. U.S. Rubber Co.,* 371 F.2d 950 (CADC 1967) to support his "continuing" claim theory. That was a tort action involving the misappropriation of intellectual property, and therefore presented the issue of continuing use of a trade secret as a "continuing tort." Any tort theories which plaintiff may have reserved are beyond this court's jurisdiction. *See* note 10, *supra.*